UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MY GOALS SOLUTIONS, INC. and NYC MEDICAL PRACTICE IP HOLDINGS CORP., <br><br> Plaintiffs, <br><br> v. <br><br> ZEUS NETWORKS, LLC; JOHN AND JANE DOES 1-10; and BUSINESS ENTITIES A-J, <br><br> Defendants. | Civil Case No. <br><br> COMPLAINT, JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL |

Plaintiffs, MY GOALS SOLUTIONS, INC. and NYC MEDICAL PRACTICE IP HOLDINGS CORP., (hereafter, "Plaintiffs"), by and through their attorneys, Lurie Strupinsky, LLP, complaining of Defendants, sets forth and alleges as follows:

**PRELIMINARY STATEMENT**

1.  This action addresses the wrongful use of these Plaintiffs' trademarks for a commercial purpose, and advertisement thereto, without authorization or consent. The use was in a defamatory and improper television show meant to, inter alia, cause harm to Plaintiffs as an effort to provide support for a third-party, Mr. Martin, who is a party in default in a separate arbitration matter due to her ongoing, pervasive, and improper defamation.

2.  Indeed, extensive battles have arisen by and between Plaintiffs and Defendant Zeus Networks, LLC already related to same, but now must be addressed herein due to the failure to obtain explicit authorization to use these trademarks, failure to execute the agreement as agreed to by Plaintiffs, and now are using these trademarks concurrently with an effort to defame and cause harm to Plaintiffs.

3.     As the Defendant has made clear that there is nothing that money cannot remedy, Plaintiffs are forced to come to court to protect the unauthorized use of their trademarks by Defendant in its defamatory actions.

**PARTIES**

4.     Plaintiff My Goals Solutions, Inc. ("MGS") is a New York corporation, with its principal address as is 721 St. Nicholas Avenue, New York, New York 10031, doing business in New York City and State.

5.     Plaintiff NYC Medical Practice IP Holding Corp. ("NYCIP") is a New York corporation.

6.     NYCIP is the owner of the Trademark "Goals Aesthetics & Plastic Surgery" which was registered on March 12, 2019, under Registration No. 5698641.

7.     MMGS is the owner of the Trademarks "Double BBL", which was registered on June 14, 2022, under Registration No. 6762641; and "FlexSculpt", which was registered on February 22, 2022, under Registration No. 6652777.

8.     Defendant The Zeus Networks, LLC ("Defendant") is a web-based television streaming station, organized in the State of Delaware, with a principal office in California, and which produces and displays its television programs nationally, including in New York and within the Southern District of New York.

9.     The fictitious parties identified herein are so designated because their identities are currently unknown and, upon review of discovery, may show that they are liable for the damages asserted herein and thus an amended complaint may be required.

**NATURE OF THE CASE**

10. This is an action for trademark infringement, and trademark dilution, brought pursuant to Sections 32, 43(a), 43(c), and 44 of the Lanham Act, with further State law based causes of action under Sections 349, 350, and 360-l of the New York General Business Law, and for violations of the common law.

11. The common law claims arise under allegations of common law trademark protections, fraud and fraudulent conduct, and other offenses.

12. Many of the common law claims arise under the permissive joinder provisions of *Fed. R. Civ. P.* 20, as the issues therein are intertwined with the statutory and federal claims, and a full adjudication of all issue against all parties would simplify the claims, eliminate the risks of contradictory rulings, and would be in the best interest of justice and judicial efficiency.

**JURISDICTION AND VENUE**

13. This Court has Subject Matter Jurisdiction if this action pursuant to 28 U.S.C. §§ 1331 and 1338 as the claims herein arise out of violations of the Lanham Act including trademark infringement and dilution.

14. The Court has Supplemental Jurisdiction, pursuant to 28 U.S.C. § 1367 for the New York statutory claims and the common law claims.

15. Similarly, the Court has Subject Matter Jurisdiction over the New York Business Law claims under 28 U.S.C. § 1338.

16. This Court has personal jurisdiction over Defendant as it is a national entity that regularly advertises and displays its goods and services in the State of New York.

17. The Court further has jurisdiction over the Defendant as the acts and omission which cause the basis of this case was against New York entities which are in New York and the

commercial show using the trademarks was directly advertised and promoted in New York, thus both specific and general jurisdiction apply.

18.     Venue is proper in this Judicial District under 28 U.S.C. § 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

19.     My Goals Solutions, Inc. (hereinafter "Goals") provides administrative services for several plastic-surgery medical offices throughout the United States that do business under the registered trademark of GOALS AESTHETICS AND PLASTIC SURGERY® (the "Goals Trademark").

20.     The Goals Trademark is the property of NYC Medical Practice IP Holding Corp. which provides a license to Goals to use and sublicense the Goals Trademark.

21.     Plaintiff Goals also owns trademarks on "DOUBLE BBL" (the "Double BBL Trademark") and "FLEXSCULPT" (the "Flexsculpt Trademark").

22.     On or about May 1, 2023, Goals was approached by representatives of a business which was identified as The Zeus Network to work on a production for their internet-based television station.

23.     In the process, these representatives sought to bring their talent, Ms. Goldie Martin a/k/a "Rollie Pollie," to a facility managed by Goals to have plastic surgeries performed on her.

24.     Indeed, Rollie Pollie is a known reality television personality who has a reputation for brash and sexual content, and an identity of a person with a high body mass index ("BMI").

25.     Defendant's representatives promised that the television production would be entirely positive, would benefit Goals' and Dr. Voskin's reputations by putting them in a positive

light, and that the sole consideration for the services to be provided by Goals was the positive advertisements and representations stemming from the production.

26. Goals notified Defendants, and Defendants contractually accepted, the obligation to allow Plaintiffs to review any and all footage before public display of same to ensure that they were not shown in a negative or demeaning manner as can be done with editing used in "reality television."

27. Further, due to the concerns of Goals and Dr. Voskin of the filming of other patients and the risk of violating HIPAA, they required that they be provided an opportunity to review all footage to ensure no other patients were in the videos. Same as the request concerning the risk of negative portrayal discussed above, Defendants agreed.

28. With these promises made, Goals agreed to allow the filming of their location(s), arranged for two surgeries for Ms. Martin, and allowed a limited use of the three trademarks.

29. Defendants' agents acted in an expedited manner, providing draft agreements (which were rejected) to be signed by Goals, and making promises, which, upon information and belief, they did not have authority to promise.

30. Plaintiffs rejected the license provided by Defendant and submitted to them an alternative form agreement which could be used. Defendant agreed to use that form, but then never arranged for signature of same.

31. However, based upon certain verbal promises made, continued filming was tacitly permitted with the advisement and acknowledgment that the contract would eventually be signed and that Defendant would perform consistent with its promises.

32. The first procedure was performed on May 15, 2023 at Goals' affiliated medical practice in Atlanta, Georgia. Same occurred without issue.

33. The second procedure was performed on July 20, 2023 at Goals' affiliated medical practice in Los Angeles, California.

34. In contrast to the first procedure, Ms. Martin's conduct thereafter was beyond reproach.

35. Subsequent to her procedure, she made innumerable threats to Goals' staff, and the staff of the medical practice, was abusive, and otherwise acted in a wrongful manner.

36. Ms. Martin also made multiple defamatory claims at that time, most relevant, she falsely alleged that Goals, its doctors, and others were "unprofessional."

37. Thereafter, Ms. Martin began and continued a campaign of harassment, defamation, and used her sizable social media following in furtherance of same.

38. Eventually, in February of 2024, Ms. Martin accused Goals, falsely, of killing patients and calling Goals "death people" which resulted in Goals filing for arbitration (pursuant to its agreements with Ms. Martin) to seek damages for defamation and defamation per se.

39. Service was made on Ms. Martin on March 16, 2024.

40. Thereafter, on March 24, 2024, Plaintiffs' principal, Sergey Voskin, M.D., became aware that Defendant had created a video promotional trailer and had "tagged" Plaintiff Goals in it on social media.

41. Upon review of the video, much was without issue – until the end! Indeed, it is clearly heard on video when Ms. Martin said that Goals and its staff and employees (including Plaintiffs) are "unprofessional as f*ck" before continuing with threats to Plaintiff EV in saying "b*tch, I'll make you lose this whole mother*cking building, b*tch."

42. Throughout the promotional video, Plaintiffs' locations and trademarks are regularly used and displayed.

43. Plaintiffs' principal also noticed that there were people in shots on the video that appeared to be, or possibly were, patients. All of this is just in the promotional video, and concerned with what might be on the rest of the planned show, Plaintiffs had to act.

44. Defendant failed to provide Goals an opportunity to review the footage before its publication to allow Goals to ensure that no patients were shown on the video as promised.

45. Defendant failed to provide Goals an opportunity to review the footage before its publication to ensure that it was not being used as a vehicle to defame or disparage Goals or, based upon her most recent conduct, as a vehicle for Ms. Martin to defame and/or disparage Goals, its staff, or the Plaintiffs herein.

46. Beginning on March 25, 2024, Plaintiffs advised Defendant multiple times that it does not authorize them to use Plaintiffs' locations or trademarks and any implicit right had been revoked.

47. Defendant, through their general counsel, refused to acknowledge same regarding trademarks.

48. From March 26, 2024 through April 10, 2024, Goals attempted to obtain restraints against Defendant for its breaches in the Supreme Court for the State of New York located in New York County. Despite the harm, the New York State Courts refused to grant an injunction on the basis of a release – even on behalf of Goals, which did not have a signed agreement with Defendant (thus conflating Dr. Voskin personally, and as a shareholder, with the Goals corporation).

49. Notwithstanding, and while the New York State action was pending, Defendant published a second video promotion of their television show on or about April 7 or 8, 2024.

50. This second trailer was seen by the Plaintiffs in New York as it was published to YouTube, Instagram, and other national (and international) systems and was targeted towards any

and all potential viewers and for the intention of obtaining subscribers to Defendant to watch the show and earn funds.

51. In review of the second trailer of early April, Plaintiffs herein saw that Defendants continue to use Plaintiffs' locations and the Trademarks despite no written agreement to use same was provided.

52. The second video continues to defame and disparage Goals and Dr. Voskin.

53. Indeed, since the posting of this video, Goals and its staff, have appeared on several social media "influencer's" pages with "comments" and "reactions" which has included ridicule against Goals.

54. In several of these subsequent posts, the Trademarks are used and ridiculed.

55. Therefore, as a result of the conduct of Defendant, Plaintiffs have been harmed and damaged, both monetarily and otherwise.

## FIRST CAUSE OF ACTION
### (Federal Trademark Infringement in Violation of Sections 32 of the Lanham Act (15 U.S.C. § 1114))

56. Plaintiffs repeat, reiterate, and re-allege each allegation set forth above with the same force and effect as though fully set forth herein.

57. Sections 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person using in commerce, without the consent of the registrant:

> *Any* reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

58. All of the identified trademarks herein are federally registered. These trademarks are distinctive and is associated in the mind of the public, with respect to the plastic surgery/cosmetic surgery/aesthetics industry, with Plaintiffs.

59. Additionally, Plaintiffs' associated entities by way of contract or otherwise, utilize these trademarks in extensive advertising, sales, and the popularity of the services utilizing and trading on these trademarks, and MGS/NYCIP's extensive conduct in protecting said trademark, these trademarks, as it relates to the subject industry and services, has acquired secondary meaning so that the public, in the applicable industry, associates the trademark solely and exclusively with Plaintiffs.

60. Neither MGS nor NYCIP authorized Defendant's use of the Goals' trademark, and, indeed, demanded return of their intellectual property including the trademarks.

61. To the extent an implicit license to use was provided, same was revoked in writing to Defendant's general counsel.

62. Defendant's unauthorized use of the trademarks on, or in connection with, the advertising and sale of services constitutes the use of Plaintiffs' registered marks in commerce.

63. Defendant's unauthorized use of these trademarks has resulted in this Defendant unfairly and illegally benefitting from Plaintiffs' goodwill. This has caused, and continues to cause, irreparable injury to the public in the applicable industry, NYCIP, MGS and their associated practices, these trademarks, and the substantial goodwill represented as a result.

64. Therefore, Defendant has engaged in trademark infringement in violation of 15 U.S.C. § 1114.

65. Defendant has caused, and will continue to cause, irreparable injury to Plaintiffs.

66. Plaintiffs have no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

67. Defendant's use is willful as well, as Plaintiffs specifically advised the Defendant's general counsel that they were not permitted to use the trademarks but refused to withdraw same.

68. As a proximate result of Defendant's wrongful conduct, Plaintiffs have been irreparably harmed, suffered damage, and Defendant has profited in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Trademark Infringement in Violation of New York Common Law)

69. Plaintiffs repeat, reiterate, and re-allege each allegation set forth above with the same force and effect as though fully set forth herein.

70. Plaintiffs owns all right, title and interest in and to the Goals, Double BBL and FLEXSCULPT trademarks as described above, including all common law rights to the Goals trademark and logo representing the trademark.

71. The services sold and offered for sale by Defendant incorporate use of Plaintiffs' common law trademarks, the use thereof is unauthorized and likely to cause consumer confusion in the applicable industry who seek such services and also dilute the value thereof as to other competitors who would desire to trade or use Plaintiffs' trademarks.

72. Defendant's acts have caused, and will continue to cause, irreparable injury to Plaintiffs. Plaintiffs have no adequate remedy at law and is thus damaged in an amount not yet determined.

## THIRD CAUSE OF ACTION
### Trademark Dilution in Violation of the New York General Business Law
### (N.Y. Gen. Bus. Law § 360-1))

73. Plaintiffs repeat and reallege the preceding paragraphs as if set forth in full herein.

74. New York General Business Law, Section 360-1, sets forth that:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

75. Plaintiffs are the exclusive owner of the Goals, Double BBL, and FLEXSCULPT trademark as it applies to cosmetic elective surgery services.

76. Through prominent and continuous use in commerce, including commerce within New York, and actions to protect it, the Goals, Double BBL, and FLEXSCULPT trademarks have become, and continues to become, famous and distinctive.

77. After the Goals, Double BBL, and FLEXSCULPT trademarks became famous, and without the authorization from Plaintiffs, Defendant used unauthorized reproductions of the Goals, Double BBL, and FLEXSCULPT trademarks in their publication of the "Rollie Pollie" video program.

78. This Defendant's unauthorized use of the Goals, Double BBL, and FLEXSCULPT trademarks dilutes and/or is likely to dilute the distinctive quality of those marks, and in fact tarnishes the reputation of the marks.

79. This Defendant's unlawful use of the Goals, Double BBL, and FLEXSCULPT trademarks, specifically through the disparaging statements made in the video program, have diluted the trademark and caused tarnishing of same in the minds of the consumers, thereby lessening the value of the trademarks as a unique identifier for Plaintiffs' services.

80. By the acts described above, this Defendant has diluted, and are likely to dilute the distinctiveness of the Goals, Double BBL, and FLEXSCULPT trademarks has caused a likelihood of harm to Plaintiffs' reputation in violation of Section 360-1 of the New York General Business Law.

81. Defendant's acts have caused, and will continue to cause, irreparable injury to Plaintiffs. Plaintiffs have no adequate remedy at law and is thus damaged in an amount yet to be determined.

**FOURTH CAUSE OF ACTION**
**(Federal Trademark Dilution in Violation of**
**Section 43(c) of the Lanham Act**
**(15 U.S.C. § 1125(c))**

82. Plaintiffs repeat, reiterate, and re-allege each allegation set forth above with the same force and effect as though fully set forth herein.

83. Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), sets forth, in pertinent part, that:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

84. Plaintiffs are the exclusive owners of the Trademarks.

85. The Trademarks are famous and distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

86. The Trademarks are distinctive in the industry of Plaintiffs and have been used for several years, even prior to final registration thereof, and play a prominent role in the marketing and advertisement of Plaintiffs' goods and services across many different media.

87. The Trademarks have gained widespread publicity and public recognition, especially in the plastic surgery industry, in New York and elsewhere.

88. The Defendant's use of advertising using the Trademarks constitutes use in commerce thereof.

89. Plaintiffs have not licensed or otherwise authorized the use of the Trademarks to the Defendant and, even if they had, Plaintiffs withdrew the right to the license in writing.

90. Consumers and the public are being misled in the watching of Defendant's programs that the Defendant is associated with, sponsored by, or affiliated with Plaintiffs or that Plaintiffs are involved in any way with the source of the advertisements and programs of Defendant.

91. Defendant's use of the Trademarks, especially in their defamatory entertainment and non-news based show, dilutes and/or is likely to dilute the distinctive quality of the mark and to tarnish the value of the mark to identify and distinguish Plaintiffs' services.

92. This Defendant's unlawful use of the Trademarks in connection with their defamatory show is likely to tarnish those trademarks and cause blurring in the minds of consumer in the plastic surgery industry as to reality and what is fictitiously and defamatory on this show, thereby lessening the value of the Trademarks in the industry.

93. As any potential license was withdrawn, such conduct of Defendant of continuing to use is thus clearly willful under the law.

94. Defendant's acts have caused, and will continue to cause, irreparable injury to Plaintiffs to which Plaintiffs have no adequate remedy at law and is thus damages in an amount yet to be determined.

**FIFTH CAUSE OF ACTION**
**((Deceptive Acts and Practices Unlawful**
**in Violation of the New York General Business Law**
**(N.Y. Gen. Bus. Law §§ 349 and 350))**

95.     Plaintiffs repeat, reiterate, and re-allege each allegation set forth above with the same force and effect as though fully set forth herein.

96.     New York General Business Law, Section 349, sets forth, in pertinent part that: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

97.     Similarly, New York General Business Law, Section 350 states, in pertinent part, that: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

98.     Through the advertisement, distribution, offer to as to the Transforming Rollie show with scenes and use of the Trademarks, this Defendant has engaged in a consumer-oriented conduct that has affected the public interest of New York and has resulted in injuries to consumer in New York including, but not limited to, those interested in plastic or cosmetic surgery.

99.     This Defendant's deceptive acts or practices, as described herein, are materially misleading. Such acts or practices have deceived or have a tendency to deceive a material segment of the public, *to wit*, those who are seeking plastic surgery or interested in same, to which this Defendant have implicitly and explicitly directed their marketing activities, and Plaintiffs have been injured as a result.

100.    By the acts described above, these defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 and 350 of the New York General Business Law.

101. This Defendant's acts have caused, and will continue to cause, irreparable injury to Plaintiffs which have no adequate remedy at law and is thus damaged in an amount not yet determined.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor, and against Defendant, jointly and severally, as follows:

a. Enjoin, preliminarily and permanently, Defendant from:

   i. Using any reproduction, copy or colorable imitation of the Trademarks (as defined herein) for and in connection with any use not authorized by Plaintiffs;

   ii. Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs business reputation or dilute the distinctive quality of the Trademarks;

   iii. Further infringing the Plaintiffs Trademarks by producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any services not authorized by Plaintiffs that bear the Trademarks;

   iv. Using any simulation, reproduction, counterfeit, copy or colorable imitation of the Trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized services in such fashion as to relate or connect, or tend to relate or connect, such services in any way to Plaintiffs, or to any services sold, manufactured, sponsored or approved by, or connected with Plaintiffs;

      v. Infringing the Trademarks, or Plaintiffs' rights therein, or using or exploiting the Trademarks, or diluting the Trademarks; and

      vi. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

B. Awarding actual damages, trebled, and an award of all profits that Defendant derived from using the Trademarks, trebled as provided by 15 U.S.C. § 1117;

C. Awarding counsel fees and costs of suit as provided by 15 U.S.C. § 1117;

D. Awarding statutory damages, pursuant to 15 U.S.C. § 1117 (c)(1) in the amount of Two Hundred Thousand Dollars ($200,000.00);

E. Awarding statutory damages, pursuant to 15 U.S.C. § 1117 (c)(2) in the amount of Two Million Dollars ($2,000,000.00) for willful use of the Trademarks;

F. Awarding statutory damages in the amount of One Hundred Thousand Dollars ($100,000.00) pursuant to 15 U.S.C. § 1117 (d);

G. Actual damages for the violations of N.Y. Gen. Bus. Law §§ 349 and 350.

H. Punitive damages;

I. Award prejudgment and post-judgment interest; and

J. Any other such relief as the Court deems just and appropriate.

## **JURY TRIAL DEMAND**

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff hereby demand a jury trial on triable issues raised by this complaint.

Dated: April 17, 2024

                                          Respectfully submitted,

                                          __/s/ Joshua M. Lurie____
                                          Joshua M. Lurie, Esq. (JL7272)
                                          Lurie Strupinsky, LLP
                                          15 Warren Street, Suite 36,
                                          Hackensack, New Jersey 07601
                                          Ph. (201) 518-9999
                                          Fax. (201) 479-9955
                                          jmlurie@luriestrupinsky.com